**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**GUY MADISON NEIGHBORS,**

**Plaintiff,**

**v.**

**LAWRENCE POLICE
DEPARTMENT, et al.,**

**Defendants.**

**Case No.  15-CV-4921-DDC-KGS**

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff asserts civil rights violations against defendants in this lawsuit.  This matter comes before the court on several motions, including defendants' Motion to Dismiss for Failure to State a Claim (Doc. 24).  Plaintiff never has responded to defendants' Motion to Dismiss, despite the court affording him several opportunities to do so.  Although the local rules allow courts "ordinarily" to grant uncontested motions, *see* D. Kan. Rule 7.4(b), the court nevertheless addresses the merits of defendants' motion.  For the reasons explained below, the court grants in part and denies in part defendants' Motion to Dismiss.  The court also denies all other pending motions in this case.

I.      **Background**

On August 19, 2015, *pro se* plaintiff Guy Madison Neighbors filed a civil complaint against the following defendants:  the Lawrence Police Department; the City of Lawrence, Kansas; Chief of Police Tarik Khabit; two police officers;[1] Municipal Judge Scott Miller; City Prosecutor Steven M. Lehwald; and additional unknown defendants (John Does).  Doc. 1.  He claims that defendants violated his constitutional rights by citing and prosecuting him for traffic

---

[1]      Plaintiff identifies the officers only as Officer Wech and Officer Robinson.  Doc. 1 at 1-3.

violations.  He contends that these actions are part of a pattern of harassment by the Lawrence

Police Department that has lasted for almost 10 years.  This harassment, plaintiff asserts,

includes eight criminal cases against him in federal court.  According to plaintiff, the government

eventually dismissed all eight cases.

On November 17, 2015, defendants filed a Motion to Dismiss for Failure to State a Claim

(Doc. 24), seeking dismissal of plaintiff's lawsuit under Fed. R. Civ. P. 12(b)(6).  Doc. 24.  On

April 7, 2016, the court issued a Notice and Order to Show Cause because plaintiff had filed no

response to defendants' Motion to Dismiss.  Doc. 57.  The court explained that D. Kan. Rules

6.1(d)(2) and 7.1(c) required plaintiff to respond to defendants' motion within 21 days, *i.e.* by

December 8, 2015.  *Id.* at 1.  It also explained that "[u]nder D. Kan. Rule 7.4(b), a party 'who

fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d)

waives the right to later file such brief or memorandum' unless there is a showing of excusable

neglect."  *Id.* at 2 (quoting D. Kan. Rule 7.4(b)).  And, the court explained that its local rule

provides "'[i]f a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d)

time requirements, the court will consider and decide the motion as an uncontested motion.

Ordinarily, the court will grant the motion without further notice.'"  *Id.* (quoting D. Kan. Rule

7.4(b)).  The court ordered plaintiff to show cause, in writing, on or before April 29, 2016, why it

should not consider and rule on defendants' motion as an uncontested one under D. Kan. Rule

7.4(b).  *Id.*  The court also directed plaintiff, if he intended to file a response to defendants'

motion, to file it on or before April 29, 2016.  *Id.*

On April 15, 2016, plaintiff filed a "Motion to Respond to the Judge[']s Order to Show

Cause" (Doc. 59).  In this filing, plaintiff asserted that defendants' Motion to Dismiss is moot

because he had filed an Amended Complaint.  *Id.*  The court construed plaintiff's filing as a

response to the court's April 7, 2016 Show Cause Order.  Doc. 60 at 1.  And it considered his argument that no response to defendants' Motion to Dismiss was required because, plaintiff thought, the Motion to Dismiss was moot after he filed an Amended Complaint.  *Id.*  The court explained that plaintiff's understanding of the procedural posture was incorrect.  *Id.*  While plaintiff had filed an Amended Complaint (Doc. 30), he did so without moving for leave to amend his Complaint as Fed. R. Civ. P. 15(a)(2) and D. Kan. Rule 15.1(a) require.  *See id.* at 3.  For that reason, the court struck plaintiff's Amended Complaint.  *Id.*  The court also explained that the Motion to Dismiss was not moot.  *Id.* at 1.

But the court also determined that plaintiff had demonstrated good cause and had explained why he did not respond to defendants' Motion to Dismiss, *i.e.*, he thought the motion was moot.  *Id.* at 2.  For that reason, the court allowed plaintiff additional time to respond to defendants' Motion to Dismiss and ordered him to file a response on or before May 11, 2016.  *Id.* at 2, 5.

Plaintiff filed no response as the court directed.  He instead appealed the court's Order allowing him additional time to file a response.  Doc. 66.  The Tenth Circuit dismissed plaintiff's appeal for lack of jurisdiction because this court has entered no final or otherwise appealable order.  Doc. 69.

To date, plaintiff still has not responded to defendants' Motion to Dismiss.  Because plaintiff has not responded timely to defendants' Motion to Dismiss, the court could grant the motion as an uncontested one under D. Kan. Rule 7.4(b).  The court, however, declines to do so, and instead addresses defendants' motion on the merits.  For the reasons explained below, the court grants in part and denies in part defendants' Motion to Dismiss.

## II.    *Pro Se* Litigant Standard

Because plaintiff brings this lawsuit *pro se*, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not assume the role of advocate for a *pro se* litigant.  *Id.*  Also, a litigant's *pro se* status does not excuse him from complying with the court's rules or facing the consequences of noncompliance.  *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

In several filings, plaintiff refers to himself as proceeding "in pro-per."  He even filed a "Notice Plaintiff Appears in Propria- Persona And Not Pro-Se."  Doc. 62.  In it, he objects to the court's use of the term *pro se* because, by doing so, plaintiff contends the court is holding plaintiff to the same standard as a licensed attorney and thus violates his due process rights.  *Id.* at 1.  But as noted above, the *pro se* standard in our Circuit requires courts to hold a *pro se* litigant's filings to a *less* stringent standard than formal pleadings drafts by lawyers.  *Hall*, 935 F.2d at 1110.  The court applies this standard because the Tenth Circuit requires it.  But the standard also appears to conform to plaintiff's request that the court not hold him to the same standard as a licensed attorney.

Plaintiff also claims "[t]here is a huge difference between Pro- Per, as [opposed] to pro-se."  Doc. 62 at 1.  The federal court for the Middle District of Pennsylvania has explained the difference between these two terms as follows:

> According to Black's Law Dictionary, [*in propria persona*] was formerly a rule of pleading that an attorney, as an officer of the court, could not appear before a court which did not have jurisdiction.  By appearing with an attorney, the party was admitting the jurisdiction of the court.  Any challenge to jurisdiction would have to be made without an appearance by counsel.  A person making such a

> challenge, then, would appear "in their own person," or *in propria persona*.
> Black's Law Dictionary 792 (6th ed. 1990).
>
> On the other hand, a person appearing at any time without counsel is proceeding
> *pro se*. *Id.* at 1221. Thus, a non-attorney appearing to challenge jurisdiction was
> both *in propria persona* and *pro se*, but the designation of their status as *in
> propria persona* would not survive the determination of jurisdiction, and they
> would be proceeding solely with *pro se* status thereafter if no counsel appeared.

*United States v. Goldberg*, 937 F. Supp. 1121, 1125 n.1 (M.D. Pa. 1996). Several courts,

including our own, have recognized that *in propria persona* "has historical significance as a

former rule of pleading," but "'the term *in propria persona* is outdated, at least as having a

separate legal meaning. Courts have continued to use the phrases *in propria persona* and *pro se*

interchangeably and synonymously." *Braun v. Stotts*, No. 93-3118-GTV, 1997 WL 383034, at

*1 (D. Kan. June 19, 1997) (quoting *Goldberg*, 937 F. Supp. at 1125 n.1); *see also United States

ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 12 n.3 (D.D.C. 2003) (noting

that "the terms *pro se* and *pro persona (pro per)* are analogous." (citing Black's Law Dictionary

(7th ed. 1999)); *Wik v. Kunego*, No. 11-CV-6205-CJS, 2014 WL 1746477, at *5 (W.D.N.Y. Apr.

30, 2014) ("*Pro se* is synonymous with *in propria persona*. The court understands Plaintiff's

status as a person representing himself." (citations omitted)).

Even if two terms have a different meaning, plaintiff does not contest the court's

jurisdiction. Indeed, he's the one who filed this lawsuit here. The court thus finds no reason to

refer to plaintiff as proceeding *in propria persona*. And, as our court has recognized, "the

Supreme Court and the Tenth Circuit have used the term 'pro se' when discussing self-

representation." *Braun*, 1997 WL 383034, at *1 (citing *McKaskle v. Wiggins*, 465 U.S. 168

(1984); *United States v. McKinley*, 58 F.3d 1475, 1480 (10th Cir. 1995); *United States v.

Reddeck*, 22 F.3d 1504, 1510 (10th Cir. 1994)). Following Judge Van Bebber's guidance in

*Braun*, the court "will continue to use the phrase 'pro se' when referring to self-representation." *Id.* And accordingly it will refer to plaintiff as proceeding *pro se* in this case.

### III.   Plaintiff's Motion to Join Defendants' Attorney as a Defendant

Before turning to the Motion to Dismiss, the court addresses plaintiff's recent filing asking to add defendants' attorney as a defendant in the case. He also asks the court to strike all pleadings filed by defendants' attorney, including the Motion to Dismiss, because, plaintiff contends, the attorney cannot prove that he has a license to practice law. *See* Doc. 63. The court denies this relief for several reasons.

First, plaintiff's assertion that defense counsel lacks a license to practice law is incorrect. Magistrate Judge Sebelius previously denied plaintiff's motion to disqualify defendants' attorney on these same grounds. Doc. 61. Judge Sebelius explained: "Defense counsel . . . is a licensed attorney who is admitted to practice in the District of Kansas." Doc. 61 at 1–2. Plaintiff refuses to accept this statement and instead "prays this court will order the attorney to show his licenses to practice law [ ] or be ordered to step down." Doc. 72 at 2. The court need not order defense counsel to engage in such a futility. Plaintiff can review the case's docket for confirmation that defendants' counsel is licensed to practice law in this court. Our court's local rules only authorize attorneys admitted to this court to appear and practice on behalf of litigants. D. Kan. Rule 83.5.1(a), (c). The docket reflects defense counsel's "active" bar status and his assigned Kansas bar number. One also can confirm defense counsel's active status by searching the Bar Attorney Status Lookup and Directory Service on the court's website. *See* https://ecf.ksd.uscourts.gov/cgi-bin/BarLookup.pl. Plaintiff's assertion that defense counsel "lack[s] proof that he has a real license[ ] to practice law" is simply wrong. Doc. 63 at 1.

Second, plaintiff has failed to comply with our court's local rules governing motions for leave to amend.  Under D. Kan. Rule 15.1(a)(2), a party filing a motion for leave to amend a pleading must attach the proposed amended pleading.  Plaintiff has attached no proposed amended complaint naming defendants' counsel as a defendant and asserting allegations against him.  But, even if plaintiff had attached a proposed amended complaint as the rule requires, the court would deny him leave to amend his Complaint because the proposed amendment is futile. [2]

Although Rule 15(a)(2) directs courts to "freely give leave when justice so requires," a court "may refuse to allow amendment if it would be futile."  Fed. R. Civ. P. 15(a)(2); *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (citation omitted).  "'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."  *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014) (quoting *Full Life Hospice, LLC*, 709 F.3d at 1018).  "'A complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) if the plaintiff fails to allege facts that would 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* at 1012–13 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, plaintiff asserts two theories for adding defense counsel as a defendant in this case.  First, he accuses defense counsel of practicing law without a license.  As explained above, plaintiff has no factual basis to support this conclusory assertion.  Second, plaintiff asserts that defense counsel, by representing defendants in this case, has assisted and conspired with defendants to injure him.  *See* Doc. 63 at 1, 3.  Plaintiff's conclusory allegations of conspiratorial conduct fail to state a claim against defense counsel.  *See*, *e.g.*, *Brooks v. Gaenzle*, 614 F.3d

---

[2]       Plaintiff invokes Fed. R. Civ. P. 20 to support his motion to add defense counsel as a party.  Rule 20 governs the permissive joinder of parties.  But, when a plaintiff seeks to add a party to the case, Fed. R. Civ. P. 15 controls "because it is actually a motion to amend."  *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1018 (10th Cir. 1994) (citation and internal quotation marks omitted).

1213, 1227–28 (10th Cir. 2010) (explaining that "a federal conspiracy action brought under either [§ 1983 or § 1985] requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective" and "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants because conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." (citations, internal quotation marks, and alterations omitted)).  Plaintiff's allegations merely assert that defense counsel is representing his clients in their defense of this case.  This kind of assertion fails to state a claim for relief against defendants' attorney.  Thus, plaintiff's proposed amendment is futile, and the court would deny plaintiff leave to file an amended complaint naming defendants' attorney as a defendant, even if plaintiff had complied with D. Kan. Rule 15.1.

## IV.    Motion to Dismiss

The court now turns to defendants' Motion to Dismiss (Doc. 24).  Defendants seek dismissal of plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).  The court grants this motion in part and denies it in part.  The court explains why below.

### A.  Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the court must assume that the complaint's factual allegations are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007); *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 964–65 (10th Cir. 1994)). A court "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Id.* (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

### B.  Analysis

Liberally construing plaintiff's Complaint, plaintiff appears to assert claims against defendants under 42 U.S.C. §§ 1981 and 1983.  *See* Doc. 1-1 at 1, 41–42.[3]  The Supreme Court has determined that "the explicit remedial provisions of § 1983 [are] controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989); *see also Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1137 (10th Cir. 2006) (concluding that "even after the 1991 amendments to § 1981, damages claims against state actors for § 1981 violations must be brought under § 1983."); *Robinson v. City of Arkansas City, Kan.*, 896 F. Supp. 2d 1020, 1041 (D. Kan. 2012) (construing plaintiff's § 1981 claim against a state actor as one brought under § 1983).  The court thus construes the claims asserted in plaintiff's Complaint as ones brought under § 1983.

Defendants contend plaintiff's Complaint fails to state a claim for relief against each of them under § 1983.  They assert several arguments in support of their Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  The court addresses each argument, in turn, below.

### 1.  Lawrence Police Department is not subject to suit.

Defendants assert that the court must dismiss the Lawrence Police Department from the action because it is not a legal entity subject to suit.  The court agrees.  Under Fed. R. Civ. P. 17(b), courts determine a party's capacity to be sued in federal court by examining the law of the state where the court is located.  Fed. R. Civ. P. 17(b)(3).  In Kansas, "subordinate government agencies do not have the capacity to sue or be sued in the absence of statute." *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985) (holding that the Kansas Highway Patrol is a government agency not subject to suit).

---

[3]    Plaintiff also cites Title VII as a basis for his claim.  Title VII prohibits unlawful employment practices by an employer.  42 U.S.C. § 2000e–2(a).  But plaintiff alleges no facts of an employment relationship that could make Title VII applicable here.

It is well established in our court that a municipal police department "is only a subunit of city government and, therefore, is not a governmental entity subject to suit." *See Whayne v. Kansas,* 980 F. Supp. 387, 391 (D. Kan. 1997) (citations omitted); *see also Galloway v. Hadl,* No. 07-3016-SAC, 2007 WL 1115201, at *1 (D. Kan. Apr. 13, 2007) (dismissing plaintiff's claims against the Lawrence Police Department because it is "not [an] entit[y] amenable to suit" thus plaintiff "state[d] no claim upon which relief could be granted" against it).  A plaintiff's claims against a subunit of the city are, instead, the equivalent of a suit against the city itself, and "[a] suit against both entities is duplicative."  *Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1300 (D. Kan. 2006) (citations omitted).

Here, plaintiff has sued the City of Lawrence as a defendant.  His claims against the Lawrence Police Department, a subunit of the city government, merely duplicate the ones against the City.  They fail to state a claim because the Lawrence Police Department is not a governmental entity subject to suit.  The court thus dismisses plaintiff's claims against the Lawrence Police Department.

> **2.  Plaintiff asserts no municipal policy or custom to subject the City of Lawrence or the individual defendants, in their official capacities, to suit.**

Defendants assert that plaintiff has stated no claim against the City of Lawrence because he had not plead that a municipal policy or custom produced a violation of his constitutional rights.  Before considering this argument, the court determines whether plaintiff alleges claims against the individual defendants in both their official and individual capacities because a § 1983 suit against a government officer in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690,

n.55 (1978)); *see also Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 695 (10th Cir. 1988) (stating that "[a] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.").

Here, plaintiff's Complaint does not specify whether he is suing the individual defendants in their official or individual capacities.  The Tenth Circuit directs that "where the complaint fails to specify the capacity in which the government official is sued, [the court] look[s] to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability."  *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993) (citations omitted).  After examining the pleadings and the course of the proceedings, the court concludes that plaintiff here is suing the individual defendants in both capacities.  First, plaintiff seeks punitive damages under § 1983.  Doc. 1 at 4.  These damages are unavailable against a municipality or an official acting in his official capacity.  *Id.* (citing *Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir. 1988)).  Second, defendants have asserted a qualified immunity defense which suggests that defendants construe plaintiff's Complaint as asserting § 1983 claims against them in their individual capacities.  *Id.* at 715–716.  But plaintiff also refers to defendants by their official titles.  Doc. 1 at 2.  The court thus concludes that plaintiff asserts § 1983 claims against defendants Khabit, Miller, Lehwald, Wech, Robinson, and the John Doe defendants in both their individual and official capacities.  And plaintiff's claims against defendants in their official capacities are, in essence, § 1983 claims against the City of Lawrence.  *See Kentucky*, 473 U.S. at 165–66.

In *Monell v. Department of Social Services*, the Supreme Court recognized that municipalities can be liable under § 1983 for violating a person's constitutional rights.  436 U.S. at 690.  But, the Supreme Court concluded that "a municipality cannot be held liable solely

because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.  Instead, a plaintiff may sue municipalities only for their own unconstitutional policies or customs—and not for acts by their employees. *Id.* at 694–95.

Thus, "[a] plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove:  (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694).  The Tenth Circuit has explained that "[a]n unconstitutional deprivation is caused by a municipal 'policy' if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself." *Carney v. City and Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (citation omitted).  And, the Circuit has defined a "custom" as "an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Id.* (citation omitted).  Such a custom is marked by "'continuing, persistent and widespread'" actions by municipal employees. *Id.* (quoting *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)).

Here, plaintiff's Complaint fails to allege the existence of any custom or policy adopted by a municipal policymaker, or any facts supporting an inference that one exists.  This is a requirement for asserting a § 1983 claim against a municipality, and without such allegations, plaintiff fails to state a claim for relief against the City of Lawrence or the individual defendants in their official capacities.  Plaintiff's allegations about the Lawrence Police Department's racial profiling and harassment of him over the last ten years are insufficient to meet this requirement

because plaintiff fails to plead facts showing that this conduct occurred under a municipal policy or custom.  In the absence of such allegations, plaintiff fails to state a claim against the City of Lawrence.  *See*, *e.g.*, *McCormick v. City of McAlester*, 525 F. App'x 885, 888 (10th Cir. 2013) (holding that plaintiff's allegations of "several instances of alleged free-speech retaliation by the police department" failed to state a § 1983 claim because he identified no "municipal policy or custom that was the moving force behind [the] alleged constitutional deprivation"); *Perry v. Ark City Police Dep't*, No. 13-1383-MLB, 2014 WL 129389, at *2–3 (D. Kan. Jan. 14, 2014) (holding that plaintiff's allegations of racial profiling and harassment failed to state a § 1983 claim because plaintiff identified no municipal policy or custom motivating the alleged constitutional deprivation and alleged no facts to infer one).  The court thus dismisses the City of Lawrence and the official capacity claims against the individual defendants for failing to state a claim under Fed. R. Civ. P. 12(b)(6).

### 3.  Plaintiff asserts no allegations against defendant Tarik Khabit or the John Doe defendants in their individual capacities.

Defendants next argue that plaintiff fails to state a claim against Chief of Police Khabit and the John Doe defendants because the Complaint asserts no allegations against these defendants.  The purpose of Fed. R. Civ. P. 8(a)'s requirement that a pleading must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief'" is to "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a) (additional citation. internal ellipses, and quotation marks omitted)).

In the context of § 1983 claims, the Tenth Circuit has held that a plaintiff's Complaint fails to provide adequate notice to the defendants of the nature of the claims against them when the pleading "fails to isolate the allegedly unconstitutional acts of each defendant . . . ."  *Robbins*

14

*v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). The Tenth Circuit reasoned that, in § 1983 actions, the named "defendants often include the government agency and a number of government actors sued in their individual capacities," and thus "it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1249–50 (citing *Twombly*, 550 U.S. at 564–65 n.10). A plaintiff therefore bears the burden to "provide fair notice of the grounds for the claims made against each of the defendants" by "isolat[ing] the allegedly unconstitutional acts [against] each defendant" in the complaint so that the defendants know "what particular unconstitutional acts they are alleged to have committed." *Id.* at 1250 (citations omitted).

Here, plaintiff's Complaint contains no allegations of unconstitutional acts committed by Chief of Police Khabit or the John Doe defendants. Plaintiff lists Chief of Police Khabit's name in his Complaint several times, but provides no factual basis to support a claim against him. Plaintiff also states that he listed the John Doe defendants "because there are many officers that have been involved in this issue and [he does] not have a record yet of all their names." Doc. 1 at 7. But plaintiff provides no factual allegations about *what* these John Doe defendants did to *whom* to provide adequate notice of his claims, as the Tenth Circuit requires. Plaintiff's conclusory allegation that the John Doe defendants "have been involved in this issue" is insufficient to state a claim for relief when he provides no facts to support that conclusion. *See Twombly*, 550 U.S. at 555 (explaining that Fed. R. Civ. P. 8(a) requires a plaintiff to plead "more than labels and conclusions").

Plaintiff's Complaint thus fails to state a claim against Chief of Police Khabit and the John Doe defendants.  The court dismisses these defendants from the action under Fed. R. Civ. P. 12(b)(6).

### 4. Municipal Judge Scott Miller is immune from suit under the doctrine of absolute judicial immunity.

Defendants assert that the court must dismiss plaintiff's claims against Municipal Judge Scott Miller under the doctrine of judicial immunity.  The Supreme Court has long held that "generally, a judge is immune from a suit for money damages."  *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam) (citations omitted).  This judicial immunity "is an immunity from suit, not just from ultimate assessment of damages."  *Id.* at 11 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Only two exceptions to this rule exist:  (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12 (citations omitted).

Plaintiff's Complaint contains no facts supporting the application of either exception here.  Plaintiff alleges that Judge Miller "violated [his] rights to due process by forc[ing] [him] int[o] a trial without probable cause, any evidence on the record to show any crime had been [committed]."  Doc. 1 at 4.  He also asserts that his due process rights were violated when he "was forced into a trial and convicted in a court that did not have jurisdiction."  *Id.*

Because these allegations describe judicial actions taken in a judicial capacity, the first exception to judicial immunity does not apply.  The Supreme Court has explained the first exception in this fashion:  "'whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'"  *Mireles*, 502 U.S.

at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  Certainly, presiding over a trial is a judicial function.  And, plaintiff's allegations that Judge Miller "forced" him into trial without "any evidence" are insufficient to overcome the doctrine of judicial immunity.  *See id.* at 11 (explaining that even "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial").

Plaintiff's allegations also fail to show that the second exception applies because Judge Miller had jurisdiction to preside over defendant's traffic case.  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in *the clear absence of all jurisdiction*."  *Stump*, 435 U.S. at 356–57 (citation and internal quotation marks omitted) (emphasis added).  Here, no absence of jurisdiction exists.  To the contrary, the Kansas Legislature has granted municipal courts "jurisdiction to hear and determine cases involving violations of the ordinances of the city."  K.S.A. § 12-4104(a).  The Legislature also has granted municipal judges "the power to hear and determine all cases properly brought before" them.  K.S.A. § 12-4106(b).  Plaintiff alleges that he was charged with violations of city traffic ordinances.  Judge Miller, presiding in the City of Lawrence Municipal Court, has jurisdiction to determine those matters.  The court thus concludes that Judge Miller enjoys absolute judicial immunity from suit and dismisses him from this action.

### 5. City Prosecutor Steven M. Lehwald enjoys prosecutorial immunity.

Defendants next argue that plaintiff's claims against City Prosecutor Steven M. Lehwald are barred by absolute prosecutorial immunity.  The Supreme Court has held that prosecutors enjoy absolute immunity "for their conduct in 'initiating a prosecution and in presenting the

State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 431 (1976)). This prosecutorial immunity is limited, however, to actions that "involve the prosecutor's role as advocate . . . rather than his [or her] role as administrator or investigative officer . . . ." *Id.* at 491 (citation and internal quotation marks omitted).

To determine whether a prosecutor has absolute immunity, courts examine "'the nature of the function performed, not the identity of the actor who performed it.'" *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). The Supreme Court has emphasized that functions "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his [or her] role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Such "acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.*

Here, plaintiff's Complaint contains no allegations that City Prosecutor Lehwald took any actions other than acting as an advocate for the City of Lawrence when he prosecuted plaintiff for traffic citations. Plaintiff alleges that the "prosecutor violated [his] rights to due process by forc[ing] [him] int[o] a trial without probable cause, any evidence on the record to show any crime had been [committed]." Doc. 1 at 4. The prosecutor's filing and prosecution of charges against plaintiff for municipal traffic violations are advocacy functions subject to absolute prosecutorial immunity. *See Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1255 (D. Kan. 2004) (holding that a prosecutor's filing of criminal charges falls within the prosecutor's advocacy function and the prosecutor is immune from suit for such functions); *see also King v.*

18

*Knoll*, 399 F. Supp. 2d 1169, 1177 (D. Kan. 2005) (holding that prosecutors were "absolutely immune from suit for acts such as filing and dismissing traffic cases against plaintiff, responding to motions, and prosecuting cases in the municipal and district courts").

And, even if City Prosecutor Lehwald prosecuted plaintiff "without probable cause" or without "any evidence" of a crime, he still enjoys prosecutorial immunity because his acts are advocacy functions on behalf of the City of Lawrence. *See Imbler*, 424 U.S. at 413, 421–22, 431 (explaining that allegations of malice or an absence of probable cause are insufficient to overcome absolute prosecutorial immunity and holding that a prosecutor was entitled to absolute immunity from claims that he knowingly used false testimony and suppressed material evidence at trial); *see also Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 n.4 (10th Cir. 1991) (explaining that "[w]hether the claim involves withholding evidence, failing to correct a misconception or instructing a witness to testify evasively, absolute immunity from civil damages is the rule for prosecutors"), *cert. denied*, 502 U.S. 1091 (1992). Because City Prosecutor Lehwald has absolute prosecutorial immunity, the court dismisses him from this action.

> **6. Plaintiff's Complaint alleges that Officers Wech and Robinson violated his clearly established constitutional rights sufficient to withstand a qualified immunity defense on a motion to dismiss.**

Defendants assert that Officers Wech and Robinson have qualified immunity for the claims plaintiff alleges against them in their individual capacities. Public officials enjoy qualified immunity in civil actions brought against them in their individual capacities when such claims arise out of the performance of their duties. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity "represents 'the norm' for public officials, and serves to insulate from suit all but the plainly incompetent or those who knowingly violate the law." *Lewis v.*

*Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (citations and internal quotation marks omitted); *see also Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) ("Law enforcement officers are, of course, entitled to a presumption that they are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs.").

A plaintiff may overcome this presumption of immunity "only by showing, first, that the official violated the plaintiff's federal statutory or constitutional rights, and, second, that the rights in question were clearly established at the time of their alleged violation." *Lewis*, 604 F.3d at 1125 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *see also Martinez v. Carr*, 479 F.3d 1292, 1294 (10th Cir. 2007) (explaining that "when a defendant raises qualified immunity as a defense, the plaintiff must meet a 'heavy two-part burden.'" (citation omitted)).

Here, plaintiff never cites specifically a clearly established constitutional right that Officers Wech and Robinson purportedly violated.  But the court liberally construes the allegations of his Complaint as follows:  Plaintiff's Complaint alleges that Officers Wech and Robinson cited him for traffic violations (Doc. 1 at 3); he asserts that Officers Wech and Robinson had "no evidence" to support the traffic citations (*id.*); and he alleges that no probable cause existed to make him stand trial for the charges (*id.* at 4).

In an attachment to his Complaint, plaintiff states that Officer Robinson stopped him on April 28, 2013, for an alleged seatbelt violation and issued him a citation, #A023469.  Doc. 1-1 at 39.  He asserts that Officer Robinson lacked probable cause to stop him for the putative traffic violation.  *Id.* at 40.  And he alleges that the citation eventually was dismissed.  *Id.* at 39.  Plaintiff also asserts that Officer Wech stopped him for a seatbelt violation on November 24, 2014, and issued him a citation, #A121247.  *Id.*  He says that Officer Wech testified that he observed plaintiff driving without a seatbelt as plaintiff passed in front of his police car.  *Id.*

20

Plaintiff contends that the police dash cam video shows that the officer could not see whether plaintiff was wearing his seatbelt because his truck has tinted windows and "sits pretty high up off the ground." *Id.* at 39–40. Plaintiff asserts that Officer Wech stopped him because he "knew the vehicle was driven by the same black man the police dept. had been harassing for the last 9 [years] and that continued harassment was the bas[i]s for the unlawful traffic stop." *Id.* at 40.

A police officer's initiation of a traffic stop is valid under the Fourth Amendment if it is "'based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.'" *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1201 (10th Cir. 2009) (quoting *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001)). The determination of "the reasonableness of the traffic stop is an objective inquiry." *Id.* A court cannot "consider the subjective motivations of law enforcement—those motivations are irrelevant." *Id.* (citing *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995)). "Instead, the 'sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *Id.* (quoting *Botero-Ospina*, 71 F.3d at 787).

Liberally construing and accepting plaintiff's allegations as true, as the court must at this stage, plaintiff has alleged sufficient facts to state a claim against Officers Wech and Robinson that withstands a qualified immunity defense asserted on a motion to dismiss. Plaintiff alleges that both officers conducted traffic stops without evidence to support them, which the court construes to allege that the officers lacked reasonable suspicion to stop plaintiff's vehicle. These allegations, accepted as true, constitute unreasonable seizures by Officers Wech and Robinson in violation of the Fourth Amendment.

This constitutional right also was clearly established when the traffic stops occurred.  "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (citation and internal quotation marks omitted). Plaintiff need not cite "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted).  And, in all circumstances, plaintiff must establish that "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Anderson*, 483 U.S. at 640).  While plaintiff cites no authority specifically to establish that the constitutional right was clearly established, existing precedent places this issue beyond debate.  *See id.*

The court has some concerns about the precedential effect of a ruling that might allow aggrieved traffic offenders to assert a § 1983 claim that will withstand a motion to dismiss. Nonetheless, it appears, under the governing case law, plaintiff has alleged sufficient facts to overcome a qualified immunity defense.  His Complaint, liberally construed alleges that:  (1) Officers Wech and Robinson violated the plaintiff's constitutional rights, and (2) the constitutional rights in question were clearly established at the time of their alleged violation. The court thus denies defendants' Motion to Dismiss defendants Wech and Robinson from the action on qualified immunity grounds but it is also mindful that the governing law will impose a much stiffer burden on plaintiff at the summary judgment stage.  *See Quinn v. Young*, 780 F.3d 998, 1007–1015, 1018 (10th Cir. 2015) (directing a district court to enter summary judgment for defendant police officers because they were entitled to qualified immunity against plaintiffs' § 1983 claims for alleged Fourth Amendment violations).

**7. Plaintiff's allegations about conduct that occurred more than two years ago are barred by the statute of limitations.**

Although plaintiff's individual capacity claims against Officers Wech and Robinson survive dismissal, plaintiff cannot base his claims on any alleged conduct occurring beyond the statute of limitations period. The applicable statute of limitations in §§ 1981 and 1983 actions is governed by the state statute of limitations for personal injury actions. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989); *see also Brown v. Unified Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted). "In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60-513(a)." *Brown*, 465 F.3d at 1188; *see also* K.S.A. § 60-513(a)(4) (stating that "[a]n action for injury to the rights of another" "shall be brought within two years").

While state law governs the length of the limitations period, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a § 1983 claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (citation and internal quotation marks omitted). The Tenth Circuit presumes that § 1983 claims arising out of police conduct accrue "when the actions actually occur." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999) (citation and internal quotation marks omitted).

In his Complaint, plaintiff alleges that the Lawrence Police Department violated his constitutional rights through various actions that occurred from 2005 through 2008, as part of its investigation of multiple federal charges that the government filed against him during that same period. *See, e.g.*, Doc. 1-1 at 2–4, 23–27; Doc. 1-3 at 10–20. Plaintiff alleges no factual basis showing that any of the named defendants in this case committed the acts he describes during that time period. But, even if he did, these actions in 2005 through 2008 occurred well beyond

23

the two-year statute of limitations.  Plaintiff provides no basis for tolling the limitations period

for this conduct, and the court finds no reason to apply tolling here.  The statute of limitations

thus bars any of plaintiff's claims premised on actions that occurred more than two years before

plaintiff filed suit.

## V.      Other Pending Motions

The court now turns to the other pending motions in this case.

### A.  Motions for Preliminary Injunctions (Docs. 10, 29, 34, 45, 73)

Plaintiff has filed five motions seeking injunctions and restraining orders (Docs. 10, 29,

34, 45, 73).  For the reasons explained below, the court denies each motion.[4]

The limited purpose of a preliminary injunction[5] under Fed. R. Civ. P. 65 is "merely to

preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex.

v. Camenisch*, 451 U.S. 390, 395 (1981).  To prevail on a motion for preliminary injunction, the

movant must prove that all four of the following equitable factors weigh in his or her favor:

(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer

irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the

injury the opposing party will suffer under the injunction; and (4) the injunction, if issued, will

---

[4]      The court asked plaintiff several times whether he wanted the court to convene a hearing on four
of these five motions.  Initially, plaintiff declined a hearing.  *See* Docs. 31, 35.  But, later, plaintiff
requested a hearing, and the court scheduled one for April 1, 2016.  Doc. 42.  About a week before the
scheduled hearing, plaintiff contacted the court to advise that he was no longer able to attend on the
scheduled hearing date.  The court ordered the parties to confer and provide an agreed-upon date for the
hearing to be reset.  *See* Doc. 55.  The parties never have provided the court with another hearing date.
The court thus rules these motions on the papers that the parties have submitted to date.

[5]      When the opposing party receives notice of a motion for temporary restraining order and has an
opportunity to respond, such as here, courts consider the motion using "the same procedure as for a
preliminary injunction motion."  *See Sac & Fox Nation v. LaFaver*, 905 F. Supp. 904, 907 (D. Kan. 1995)
(citing 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (1973)).

not be adverse to the public interest.  *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (citation omitted).

Whether to grant a preliminary injunction rests within the court's sound discretion. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (citations omitted).  A preliminary injunction is an extraordinary remedy, so the right to relief must be "clear and unequivocal." *Id.* (internal quotation marks and citation omitted).  "In general, 'a preliminary injunction . . . is the exception rather than the rule.'" *Gen. Motors Corp.*, 500 F.3d at 1226 (quoting *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)).

### 1.  Plaintiff's First Motion (Doc. 10)

Plaintiff has titled his first preliminary injunction motion as "Motion for Injunction and Restraining Order to Block District Court in Kansas City Kansas From Destroying Evidence in a Pending Civil Case."  Doc. 10.  Plaintiff's motion is difficult to understand and fails to describe whether the District Court even has possession of evidence he alleges is "missing"—including a laptop, shoes, tools, and firearms.  *Id.* at 1–2.  Nevertheless, the court liberally construes this filing as asking the court to issue an order that:  (1) blocks the United States District Court in Kansas City, Kansas from destroying evidence or requires it to preserve evidence; (2) allows plaintiff and his private investigator to have access to the evidence for "pre-trial inventory;" (3) requires the evidence moved from Kansas City to the Topeka courthouse; and (4) requires any motions pending in Kansas City to be moved to Topeka.  *Id.* at 3.

As defendants point out in their response, plaintiff's motion is not directed at any of the named defendants in the case.  Plaintiff asks the court to block the United States District Court in Kansas City from destroying evidence, but the District Court is not a party to this case.  The court thus has no authority to issue an injunction against it under Fed. R. Civ. P. 65.  But, even if

the court could issue the relief sought, plaintiff has failed to make the requisite showing under Rule 65. Plaintiff has not demonstrated that (1) he is substantially likely to succeed on the merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction, if issued, will not be adverse to the public interest. *See Gen. Motors Corp.*, 500 F.3d at 1226. The court thus denies this motion.

### 2.   Plaintiff's Second Motion (Doc. 29)

Plaintiff has titled his second motion as "Motion for Injunction and Restraining Order to Block Lawrence Kansas Municipal Court Judge Scott Miller from Retaliating Against Neighbors, By Revoking His Drivers Licenses for Failure to Appear." Doc. 29. In it, plaintiff asks the court to issue an order prohibiting Municipal Judge Scott Miller and the City of Lawrence Municipal Court from suspending plaintiff's driver's license under K.S.A. § 8-2110. Plaintiff claims that the municipal court lacks judicial authority and is retaliating against plaintiff for accusing the City of Lawrence and the Municipal Court of unconstitutional policies and procedures.

This motion also is difficult to understand. Liberally construing the filing, it appears that plaintiff was issued a traffic citation for speeding in Lawrence, Kansas in October 2015. After plaintiff failed to appear at court or pay the fine for the citation, the Municipal Court served him with a Notice of Failure to Comply with the Terms of Citation. Doc. 29 at 4. Plaintiff asserts that he did appear in the case by filing a "Notice of Removal." Doc. 29 at 5–8. Plaintiff seeks to remove his traffic case because he contends the municipal court lacks jurisdiction and Judge Miller has a conflict because of this pending lawsuit plaintiff has filed against him. The court

does not understand plaintiff's reference to removal because he never has presented or identified a notice of removal.

Defendants respond to this motion, asserting that the court should deny plaintiff's motion because the traffic citation for speeding is not at issue in this case. Plaintiff's Complaint describes two traffic citations for seatbelt violations—one received in April 2013 and another in November 2014. Doc. 1-1 at 39. The speeding violation described in this motion is a separate matter. It was issued in October 2015, and is not one of the traffic citations described in the Complaint. Defendants assert that plaintiff cannot seek preliminary relief for an issue that the court will never address on the merits. *See Camenisch*, 451 U.S. at 395 (stating that the limited purpose of a preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held.").

Even if he could obtain the relief sought, plaintiff again has failed to demonstrate any of the four requirements for injunctive relief. Plaintiff has not shown a likelihood of success on the merits. Plaintiff concedes he was issued a traffic citation, failed to appear, received a notice of that failure, and, in response, filed a notice of removal in municipal court. He has not filed a notice of removal in federal court, and, even if he had, it would not prevent the municipal court's prosecution of the traffic citation. *See* 28 U.S.C. § 1455(b)(3) ("The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded."). Plaintiff also has not shown that he will suffer irreparable harm if the injunction is denied, that his threatened injury outweighs the injury the opposing party will suffer under the injunction, or that the injunction, if issued, would not be adverse to the public interest. Because plaintiff fails to make the requisite showing, the court denies this motion.

### 3.  Plaintiff's Third Motion (Doc. 34)

Plaintiff's third preliminary injunction motion is titled "Motion for Injunction and Restraining [Order] to Block the City of [Lawrence] Kansas, Municipal Court and Judge Scott Miller, From Making Judicial Ruling Without 'Jurisdiction.'"  Doc. 34.  Plaintiff asserts in this motion that the City of Lawrence Municipal Court lacks judicial authority under the United States Constitution.  Plaintiff asks the court to issue an order prohibiting the City of Lawrence Municipal Court from "continuing to have unlawful trials."  *Id.* at 2.  He also demands that the court "shut down" the traffic fine collection process in the Municipal Court until it obtains legal jurisdiction from the Constitution or Congress.  *Id.*

Plaintiff again fails to establish the required elements for injunctive relief.  Plaintiff cannot demonstrate the first element—a likelihood of success on the merits—because the City of Lawrence Municipal Court has authority to prosecute violations of municipal ordinances.  As defendants explain in their response, the Tenth Amendment grants States the authority to regulate local governments, including creating courts and defining the extent of their jurisdiction.  *See* U.S. Const. amend. X (stating that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."); *see also Missouri v. Lewis*, 101 U.S. 22, 30 (1880) (explaining that "[e]ach State has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government.").

The Kansas Constitution, in turn, permits the legislature to confer powers of local legislation and administration upon political subdivisions.  Kan. Const. Art. 2 § 21.  Under this authority, the Kansas Legislature has authorized cities to adopt ordinances, *see* K.S.A. § 12-3001 *et seq.*, and has allowed cities to adopt traffic regulations that do not conflict with the Kansas

Uniform Act Regulating Traffic, *see* K.S.A. § 8-2001.  In addition, the Kansas Legislature has granted municipal courts "jurisdiction to hear and determine cases involving violations of the ordinances of the city . . . ."  K.S.A. § 12-4104(a).  And, it has granted municipal judges "the power to hear and determine all cases properly brought before" them.  K.S.A. § 12-4106(b).

In his motion, plaintiff alleges that he was charged with violations of city traffic ordinances and prosecuted in municipal court for those violations.  Under the Kansas statutes, the City of Lawrence Municipal Court has jurisdiction to determine those matters.  Plaintiff cites no authority for "shutting down" the city's traffic fine collection process.  As defendants explain, K.S.A. § 12-4119 allows cities to enter into contracts for collection services for debts owed to municipal courts or restitution owed under an order of restitution.  This statute implicitly recognizes that municipal courts have authority to collect fines, and it explicitly provides cities the ability to contract for collection services of outstanding fines.

Plaintiff also fails to demonstrate the other three requirements for injunctive relief. Plaintiff argues in his reply that he can demonstrate irreparable harm by "the many fraudulent federal criminal cases that were unlawfully filed against him" and the "numerous false arrest[s] he was subjected to over the course of 10 years."  Doc. 43 at 1, 2.  But these allegations pertain to the federal charges filed against plaintiff several years ago and other conduct that occurred in the past, not any immediate harm presented by the City of Lawrence Municipal Court's prosecution of municipal cases.  The court also denies this motion.[6]

---

[6]     Defendants filed a motion asking the court to strike an exhibit that plaintiff attached to this third motion for preliminary injunction because, they argue, it contains immaterial and impertinent information.  *See* Doc. 39 (titled" Motion to Strike Exhibit 34-1").  Because the court denies plaintiff's third preliminary injunction motion, it denies this related motion as moot.

#### 4.   Plaintiff's Fourth Motion (Doc. 45)

Plaintiff's next preliminary injunction motion is titled "Motion for Injunction and Restraining Order to Block the Lawrence, Kansas Police Department from [Issuing] Summons that Have Not Been Signed by a Judicial Officer of the Court." Doc. 45. In this motion, plaintiff seeks an order prohibiting Lawrence police officers from issuing summons that have not been signed by a judicial officer. Plaintiff argues that police officers are members of the executive branch, and when they sign and issue a summons to appear in court, it violates the separation of powers clause of the United States Constitution. Plaintiff contends that a judicial officer must sign the summons before it is served.

Plaintiff also describes purported defects with the citations he was issued. He claims that only "the number" is written on the citations but they fail to contain a description of the ordinance violation. And, plaintiff again asserts that the municipal court lacks jurisdiction, as he has in other filings.

Plaintiff again has failed to make the requisite showing to obtain injunctive relief. Plaintiff has not shown a likelihood of success on the merits for several reasons. First, plaintiff's Complaint does not include a claim that police officers lack authority to issue traffic citations. Thus, the court cannot grant preliminary relief because this is not an issue for final resolution on the merits in the case. But, even if this was an issue in the case, plaintiff's argument lacks merit. K.S.A. § 12-4111 gives law enforcement officers authority to detain persons, place them in custody, and arrest them. K.S.A. §§ 12-4203 and 12-4207 grant police officers authority to serve summons and notices to appear. Second, plaintiff's traffic citations are not defective under Kansas law. Instead, they contain all of the information that K.S.A. §§ 12-4205a and 8-2106

require.  Third, plaintiff cannot show that the municipal court lacks jurisdiction for the reasons already explained.

Plaintiff also fails to show the second, third, and fourth requirements for obtaining injunctive relief.  He presents no allegations of irreparable harm.  He has not shown that the alleged injury outweighs damage caused by injunctive relief.  To the contrary, the court agrees with defendants that this factor weighs in favor of denying the injunction because the City of Lawrence would suffer significant damage if an injunction precluded its police officers from issuing traffic citations or its municipal court from conducting trials.  Plaintiff also fails to establish that the requested injunctive relief is not adverse to the public interest.  To the contrary, it would harm the public interest to enjoin Lawrence police officers from issuing citations or the City of Lawrence Municipal Court from hearing and deciding cases involving violations of city ordinances because it would prevent the city from securing the safety of its citizens and lawfully prosecuting those who violate city ordinances.  For all these reasons, the court denies the motion.

### 5.  Plaintiff Fifth Motion (Doc. 73)

Plaintiff's latest preliminary injunction motion is titled "Restraining Order/Injunction to Block the State of Kansas From Receiving Federal Funding Due To Their Violation of Federal Laws, Protected Civil Liberties, and the [ ]Administrative Procedures Act of 1946." Doc. 73. Like plaintiff's other filings, this motion also is difficult to follow.  But, liberally construing the motion, plaintiff alleges that the State of Kansas has violated federal law (including the Administrative Procedure Act), and he seeks an order withholding federal funding to the State of Kansas because of these purported violations.

The court denies this motion for two reasons.  First, neither the United States nor the State of Kansas is a party to this case.  Under Fed. R. Civ. P. 65(d)(2), a court's injunction binds:

(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with the parties or their officers, agents, servants, employees, and attorneys.  Because they are not parties to this case, the court cannot enjoin the federal government from issuing federal funding, and it cannot enjoin the State of Kansas from receiving federal funding.

Second, and even if both entities were parties, plaintiff's motion fails to make the requisite showing for injunctive relief.  Plaintiff has not shown a likelihood of success on the merits, irreparable harm, the alleged injury outweighs any damage caused by injunctive relief, or the absence of public harm if the injunction is issued.  The court thus denies plaintiff's fifth motion seeking injunctive relief.

### B.  Plaintiff's Motion for Summary Judgment (Doc. 44)

Plaintiff moves for summary judgment on "all claims" he asserts in this case.  Doc. 44 at 1.  At points, plaintiff's motion is difficult to follow, but the motion appears to argue that the Lawrence Police Department had no evidence to support the traffic stops, the City of Lawrence Municipal Court lacks authority to hear his traffic cases, and the seatbelt ordinance that he was cited for violating is not a "law" because it was enacted by a municipality.  The court denies plaintiff's summary judgment motion for the reasons explained below.

First, plaintiff's summary judgment motion fails to comply with the court's local rules.  Although plaintiff appears *pro se* in this litigation, he still must comply with the court's rules.  *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).  D. Kan. Rule 56.1(a) requires a party moving for summary judgment to set forth a "concise statement of material facts" over which "no genuine issue exists."  "The facts must be numbered and must refer with particularly to those portions of the record upon which

movant relies." D. Kan. Rule 56.1(a). Plaintiff's motion here contains 14 numbered paragraphs that he describes as "facts," but these paragraphs mostly contain legal argument and none are supported by properly admissible evidence. The court could deny plaintiff's summary judgment motion for this reason alone. *See*, *e.g.*, *Wilson v. Skiles*, No. 02-3190-JAR, 2005 WL 466207, at *2 (D. Kan. Feb. 4, 2005) (striking *pro se* plaintiff's summary judgment motion for failing to comply with Fed. R. Civ. P. 56 and D. Kan. Rule 56.1); *Wolters v. Conner*, No. 03-3251-KHV, 2004 WL 723585, at *5 (D. Kan. Apr. 1, 2004) (denying plaintiff's summary judgment motion for failing to comply with D. Kan. Rule 56.1).

Second, plaintiff's motion fails to establish that summary judgment is appropriate here. To obtain summary judgment, a moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff, as the moving party, bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). Plaintiff fails to meet his burden here.

Plaintiff asserts that the Lawrence Police Department had no evidence to support the traffic stops. But to support this assertion, he cites only conclusory allegations, not evidence supported by the summary judgment record. He also asserts that the City of Lawrence Municipal Court lacks authority to hear his traffic cases. But, as explained above, this argument is baseless. He also asserts that the seatbelt ordinance that he was cited for violating is not "law" because it was enacted by a municipality. But the Kansas Legislature has authorized cities to adopt ordinances and traffic regulations that do not conflict with the Kansas Uniform Act Regulating

33

Traffic.  *See* K.S.A. §§ 8-2001, 12-3001 *et seq*.  The City of Lawrence has adopted the "Standard

Traffic Ordinance for Kansas Cities, Edition of 2015."  *See* Lawrence, Kan., City Code, ch. 17,

art. 1 § 17-101 (2015), https://lawrenceks.org/city_code.  Section 182.1(a)(1) of the Standard

Traffic Ordinance for Kansas Cities, Edition of 2015 requires each occupant of a vehicle, who is

18 years of age or older to "have a safety belt properly fastened about such person's body at all

times when the passenger car is in motion."  Standard Traffic Ordinance for Kansas Cities §

182.1(a)(1) (2015).  Section 182.1(d) establishes a $10 fine without court costs for persons who

violate section 182.1(a)(1).  *Id.* § 182.1(d)(1).  This ordinance is consistent with K.S.A. § 8-

2503(a)(1) which requires "[e]ach occupant of . . . a passenger car . . . , who is 18 years of age or

older, [to] have a safety belt properly fastened about such person's body at all times when the

passenger car is in motion."  The City of Lawrence has authority to adopt the seatbelt ordinance

that plaintiff is charged with violating, and plaintiff's argument to the contrary is without any

merit.

       Plaintiff also appears to argue that the traffic ordinances do not apply to him because he

signed his driver's license "without prejudice U.C.C. 1-308."  *See* Doc. 44 at 5 (stating that

"Neighbors, invoked his 'Common Law' rights under the uniform commercial code, by signing

'without prejudice U.C.C. 1-308' under his signature on the Kansas drivers licenses.  This

reservation of rights protected Neighbors, from any contractual agreements without his consent

and or knowledge.").  Plaintiff provides no legal authority for this argument, and § 1-308 of the

Uniform Commercial Code has no role here.  *See Thompson v. Houlihan*, No. 09 C 2914, 2011

WL 833604, at *4 (N.D. Ill. Mar. 4, 2011) (explaining that "Article 1 of the UCC applies to a

transaction only to the extent that it is governed by another article of the Uniform Commercial

Code, UCC § 1-102 . . . Section 1–308 was intended to enable a party in a commercial

transaction to accept the other side's continued performance without waiving the right to sue for breach of contract" and has no application when "no goods [are] being purchased or sold . . . nor any pre-existing contract for the parties to perform during the resolution of a dispute [exists]").

For these reasons, plaintiff has failed to demonstrate the absence of a genuine issue for trial. Summary judgment is not appropriate on this record, and the court thus denies plaintiff's summary judgment motion.

### C. Plaintiff's Notices

Last, the court addresses several notices plaintiff has filed. Although the notices are not docketed as motions, they appear to seek certain relief from the court. To the extent plaintiff intends for these notices to seek relief, the court denies the requests they make.

First, plaintiff has filed a Notice of Default (Doc. 51). Plaintiff appears to request the Clerk to enter default against defendants because, he contends, defendants failed to respond to his third motion for injunction and restraining order. Plaintiff is simply wrong. Defendants timely filed a response to that motion on December 21, 2015 (Doc. 38). But, even if defendants had failed to respond to that one motion, entry of default is not appropriate here.

Under Fed. R. Civ. P. 55(a), the Clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Defendants have not failed to plead or otherwise defend this case as Rule 55(a) requires. Defendants timely filed their Answer on October 27, 2015 (Doc. 19), and they filed a motion seeking dismissal of plaintiff's Complaint on November 17, 2015 (Doc. 24). Defendants also have responded to all motions plaintiff has filed in this case. Defendants are not in default, and plaintiff is not entitled to an entry of default, as he requests in his Notice of Default (Doc. 51).

Second, plaintiff has filed a "Notice of Claim for 'Administrative Procedures Act' Violations and Request for an Administrative Judge to Review this Claim" (Doc. 70).  While this filing is difficult to understand, it appears that plaintiff alleges a violation of the Administrative Procedures Act because, he contends, the court is holding plaintiff to the same standard as a licensed attorney in violation of his due process rights.  The court already has explained that it follows the Tenth Circuit standard requiring courts to hold a *pro se* litigant's filings to a *less* stringent standard than formal pleadings drafts by lawyers.  *See supra* Part II (citing *Hall*, 935 F.2d at 1110).  This standard satisfies plaintiff's request that the court not hold him to the same standard as a licensed attorney.

In any event, plaintiff provides no basis for applying the Administrative Procedures Act to this civil case.  The Administrative Procedures Act entitles "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to judicial review of that agency action.  5 U.S.C. § 702. Plaintiff's Complaint never challenges agency action subject to judicial review under the Act. To the extent he complains about the standard applied by the court to *pro se* litigants, the courts of the United States are not agencies subject to the provisions of the Administrative Procedures Act.  *See* 5 U.S.C. § 701(b)(1)(B).  Plaintiff thus is not entitled to the relief sought in his "Notice of Claim for 'Administrative Procedures Act' Violations and Request for an Administrative Judge to Review this Claim" (Doc. 70).

Finally, plaintiff has filed a Notice (Doc. 71), on the AO 85 Form titled Notice, Consent, and Reference of a Civil Action to a Magistrate Judge.  Plaintiff has crossed out the language on the form and has written that he "do[es] not consent to the magistrate judge being involved in [his] case at all, and the fact that he has even after [he] informed the court of [his] decision is a

due process violation." *Id.* at 1.  The court construes plaintiff's Notice as seeking recusal of Judge Sebelius.[7]

Two federal statutes govern recusal.  First, under 28 U.S.C. § 144, a litigant may seek recusal of a judge if he files "a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him [or her] or in favor of any adverse party."  28 U.S.C. § 144.  The affidavit must state with particularity "the identifying facts of time, place, persons, occasion, and circumstances" that form the basis for recusal, and it is strictly construed against the affiant.  *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) (citations omitted).  The party seeking recusal bears "a substantial burden . . . to demonstrate the judge is not impartial."  *Id.* (citations omitted).  Second, under 28 U.S.C. § 455, a judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," or "[w]here he has a personal bias or prejudice concerning a party . . . ."  28 U.S.C. § 455(a) & (b)(1).  The test for determining impartiality is an objective one, based on a judge's "outward manifestations and reasonable inferences drawn therefrom."  *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (citation omitted).

Plaintiff's Notice fails to identify any basis to disqualify Judge Sebelius under either 28 U.S.C. § 144 or 28 U.S.C. § 455.  To the extent plaintiff is dissatisfied with Judge Sebelius' previous orders, adverse rulings are not a reason for recusal.  *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (citation omitted).  The court thus refuses to order recusal of Judge Sebelius from this case, to the extent plaintiff is requesting such in his Notice (Doc. 71).

---

[7]     To the extent plaintiff contends that the magistrate judge lacks authority to decide any issues involved in this case, he is incorrect.  Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A) authorize magistrate judges to issue written orders on non-dispositive matters in civil cases.  Judge Sebelius' involvement in this case is consistent with the authority conferred by these rules.

## VI.    Conclusion

For the reasons explained above, the court grants in part and denies in part defendants'
Motion to Dismiss (Doc. 24).  The court denies defendants' motion to dismiss Officers Wech
and Robinson on qualified immunity grounds.  Plaintiff's individual capacity claims asserted
against the officers remain in the case to the extent the allegations are premised on conduct
occurring within the statute of limitations period.  The court grants the motion in all other
respects.  The court also denies the remaining pending motions in the case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to
Dismiss (Doc. 24) is granted in part and denied in part, as set forth in this Memorandum and
Order.

**IT IS FURTHER ORDERED THAT** plaintiff's Motions for Injunctions and
Restraining Orders (Docs. 10, 29, 34, 45, 73) are denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Summary Judgment (Doc.
44) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's "Motion to A-Join Defendant[s']
Attorney to This Action as a Defendant and Strike All [Pleadings Defendants'] Attorney Filed to
Date Because the [Attorney] Cannot Prove that He Has a Real Licenses to Practice Law" (Doc.
63) is denied.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Strike Exhibit 34-1 (Doc.
39) is denied as moot.

**IT IS SO ORDERED.**

Dated this 12th day of July, 2016, at Topeka, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge